IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Action No. 10-cv-2223-WJM

JOHN R. GEHERIG

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security

      Defendant.

---

## ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS

---

Plaintiff John R. Gehrig appeals the Defendant Commissioner of Social

Security's denial of Plaintiff's application for disability benefits.  (ECF No. 3.)  The

Administrative Record was filed with the Court on November 12, 2010.  (ECF No. 11.)

Plaintiff filed his opening brief on January 25, 2011 and the Commissioner responded

on March 4, 2011.  (ECF Nos. 15 & 16.)  Plaintiff's reply brief was due on March 22,

2011; none was filed.  Accordingly, this case is ripe for review by the Court.

## I.  LEGAL STANDARD

A district court's review of the Commissioner's determination that a claimant is

not disabled within the meaning of the Social Security Act is limited.  *Hamilton v. Sec'y*

*of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992).  The review is limited

to determining whether the Commissioner applied the correct legal standard and

whether the Commissioner's decision is supported by substantial evidence.  *Id.* at

1497-98; *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires more than a scintilla of evidence but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").  Although a reviewing court should meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

## II.  FACTUAL BACKGROUND

Plaintiff John R. Gehrig ("Plaintiff" or "Gehrig") is a fifty-year old man who applied for disability benefits in June 2007.  (A.R. 104-08.)  Plaintiff has suffered from mental health issues his entire life including anxiety, attention deficit hyperactivity disorder ("ADHD"), and auditory and visual hallucinations.  (A.R. 44.)  Plaintiff has a high school education and worked as an electrician for over fifteen years. (A.R. 34, 48, 150, 155.)  Plaintiff has been out of work since September 1, 2006 due to a back injury for which he had surgery in early 2007.  (*Id.*)

In his application for disability benefits, Plaintiff claimed that he became disabled on September 1, 2006 due to a back injury, anxiety, and ADHD.  (A.R. 150.)  Plaintiff's medical records show that he had surgery for a back injury in February 2007.  Two months post-surgery, he reported his pain as a "4" out of "10" during a check-up with his surgeon.  (A.R. 254.)  His medical records show that Plaintiff continues to take medication for his back pain but do not indicate that further procedures are anticipated. (A.R. 217.)  Plaintiff's medical records also show that he takes various medications for mental health issues (*e.g.*, Adderal, Klonopin).  (A.R. 45, 232, 252, 276.)

Plaintiff's application materials stated that his typical day involved walking his wife to work (approximately one mile round trip), taking care of his elementary school-aged son, and doing light housework.  (A.R. 158-59.)  Plaintiff stated that he could follow written and spoken instructions about seventy-five percent of the time, that he had never been fired from a job because of difficulties dealing with other people, and that he found that he was getting better at dealing with authority figures as he got older. (A.R. 164-65.)  He reported that he dealt with stress "well" but, depending on the circumstances, did not deal well with change. (A.R. 165.)

The Colorado Disability Determination Services denied Plaintiff's disability claim and he requested a hearing before an Administrative Law Judge ("ALJ").  (A.R. 54-55; 63-64.)  ALJ Paul Conaway held a hearing on Plaintiff's application in April 2009.  (A.R. 28-52.)  Two witnesses testified at the hearing: (1) Plaintiff; and (2) Vocational Expert Pat Paulheny.  (*Id.*)

At the hearing, Plaintiff testified that his back causes him constant pain so severe that he cannot lift more than a gallon of milk and cannot walk more than a block

without resting.  (A.R. 34-35.)  Plaintiff testified that he could only stand or sit for ten

minutes at a time and had to lay down for at least an hour two to four times a day.  (*Id.*)

With respect to his mental health issues, Plaintiff testified that he has had "lifetime

problems with people", tries to avoid crowds, and gets anxious when he is in public.

(A.R. 37-40.)  Plaintiff testified that he suffers from incredible depression that feels "like

a lead blanket wrapped around [him]".  (A.R. 42.)  Plaintiff stated that he has had

auditory hallucinations, *i.e.* hearing voices his entire life, and that he began having

visual hallucinations, *i.e.* seeing "frogmen", about twelve years ago.  (A.R. 44, 47.)

Ms. Paulheny testified that Plaintiff's prior work experience as an electrician was

classified as "very heavy" by the Department of Transportation's exertional guidelines.

(A.R. 48.)  The ALJ asked her to assume hypothetically that a 47-year-old male with

past work experience as an electrician had the following physical limitations: (1) lifting

and carrying 20 pounds occasionally, 10 pounds frequently; (2) sitting, standing, and

walking about six hours out of eight hours in a day; (3) pushing and pulling limited to 20

pounds occasionally, 10 pounds frequently; (4) never use ladders, ropes, or scaffolds;

(5) occasional use of ramps and stairs; (6) occasional balancing, stooping, kneeling,

crouching, and crawling.  (A.R. 48-49.)  Ms. Paulheny testified that someone with those

limitations could not perform Plaintiff's prior work as an electrician.  (A.R. 48.)

However, Ms. Paulheny identified three other light exertional positions that

someone with those limitations could perform and testified about the number of each of

those positions in the regional and national economy:  (1) cleaner/housekeeper (3,700

Colorado; 245,500 national); (2) laundry worker (1,200 Colorado; 82,000 national); and

(3) cashier (1,100 Colorado; 797,000 national).  (A.R. 49.)  Plaintiff's counsel

questioned Ms. Paulheny as to whether any of those jobs would be eliminated if the individual could not interact with the public.  (A.R. 49.)  Ms. Paulheny testified that the cashier job would be eliminated but that the cleaner/housekeeper and laundry positions would involve only incidental contact with other people.  (A.R. 50-51.)  Ms. Paulheny testified that if there was a physical restriction requiring that the individual have a sit/stand option, both the housekeeper/cleaner and the laundry positions would be eliminated.  (A.R. 51-52.)

On May 22, 2009, the ALJ issued his decision denying benefits.  (A.R. 11-27.) The ALJ's opinion followed the familiar five-step process outlined in the Social Security regulations.[1]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since September 1, 2006.  (A.R. 17.)  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "lumbar degenerative disc disease, status-post L5-S1 discectomy, attention-deficit/hyperactivity disorder (ADHD), psychotic disorder-NOS (not otherwise specified), adjustment disorder with depressed mood, general anxiety disorder, personality disorder—NOS, and polysubstance abuse." (A.R. 17.)  At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment.  (A.R. 17-18.)

The ALJ then assessed the following residual functional capacity ("RFC"):

---

[1]  The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  After step three, the ALJ is required to assess the claimant's residual functional capacity.  20 C.F.R. § 404.1520(e).  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

> After careful consideration of the entire record, the Administrative Law Judge find the claimant has the residual functional capacity to perform a limited range of light exertional work. He can lift, carry, or push and pull 20 pounds occasionally or 10 pounds frequently. He can sit, stand, or walk a total of 6 hours each in an 8-hour workday. The claimant can occasionally climb ramps or stairs, but never ladders, ropes or scaffolds. He can occasionally balance, stoop, kneel, crouch, or crawl. The claimant can perform the basic mental demands of competitive, remunerative work. On a sustained basis, he can respond appropriately to usual work situations, and can deal with changes in a routine work setting. However, the claimant should only have limited interpersonal contact. The claimant can have occasional interpersonal interaction with coworkers and supervisors. His job duties should primarily involve working with things rather than interacting with other people. However, members of the general public can be in the vicinity of the claimant, when the claimant performs his job duties.

(A.R. 18.)  In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's medical records.  The ALJ accepted the opinions of Plaintiff's treating physician Dr. Mark Watts, consulting psychologist Dr. Amy Crockett, and Dr. Steinhardt, a Disability Determination Services physician that reviewed Plaintiff's file. (A.R. 19-20.)  The ALJ rejected the opinion of Thomas Broadhurst, a licensed counselor who submitted a source statement on Plaintiff's behalf.  (A.R. 21-22.)  The ALJ also found Plaintiff's testimony at the hearing "not credible."  (A.R. 20.)

At step four, based on the RFC set forth above, the ALJ found that Plaintiff could not return to his prior work as an electrician.  (A.R. 22.)  At step five, the ALJ found: "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (A.R. 22.)  Specifically, the ALJ found that Plaintiff could

work as a cleaner/housekeeper or as a laundry worker.  (A.R. 23.)  Because there were

a significant number of jobs that Plaintiff could perform, the ALJ found that Plaintiff did

not meet the meaning of "disabled" for purposes of the Social Security Act.  (A.R. 23.)

Accordingly, his application for disability benefits was denied.

Plaintiff sought rehearing by the Social Security Administration's Appeals Council

but his request was denied. (A.R. 1-6.)  This appeal followed.

### III.  ANALYSIS

On appeal, Plaintiff argues that the ALJ erred in the following ways: (1) the

residual functional capacity ("RFC") determined by the ALJ was not supported by

substantial evidence; and (2) the finding that there was a substantial number of jobs in

the national economy that Plaintiff could perform was not based on substantial

evidence.  The Court will address each argument in turn below.

### A.    Whether RFC Was Based on Substantial Evidence

The RFC is an assessment of the most a claimant can do despite his or her

limitations. 20 C.F.R. § 404.1545(a)(1).  An ALJ must make specific RFC findings

based on all of the relevant evidence in the case record.  *See Winfrey v. Chater*, 92

F.3d 1017, 1023 (10th Cir. 1996); SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996).

> The RFC assessment must include a narrative discussion
> describing how the evidence supports each conclusion,
> citing specific medical facts ... and nonmedical evidence ...
> the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting
> on a regular and continuing basis ... and describe the
> maximum amount of each work-related activity the individual
> can perform based on the evidence available in the case
> record. The adjudicator must also explain how any material

> inconsistencies or ambiguities in the evidence in the case
> record were considered and resolved.

SSR 96–8p.  Although he must consider all of the relevant evidence, the ALJ is

ultimately responsible for the RFC assessment.  20 C.F.R. § 404.1546(c).  In reviewing

the ALJ's RFC, the Court must determine whether the findings underlying the RFC are

supported by substantial evidence.  *See Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th

Cir. 1999).

In this case, the ALJ formulated the following RFC:

> After careful consideration of the entire record, the
> Administrative Law Judge finds the claimant has the residual
> functional capacity to perform a limited range of light
> exertional work. He can lift, carry, or push and pull 20
> pounds occasionally or 10 pounds frequently.  He can sit,
> stand, or walk a total of 6 hours each in an 8-hour workday.
> The claimant can occasionally climb ramps or stairs but
> never ladders, ropes or scaffolds.  He can occasionally
> balance, stoop, kneel, crouch, or crawl.  The clamant can
> perform the basic mental demands of competitive,
> remunerative work.  On a sustained basis, he can respond
> appropriately to usual work situations, and can deal with
> changes in a routine work setting.  However, the claimant
> should only have limited interpersonal contact.  The clamant
> can have occasional interpersonal interaction with coworkers
> and supervisors.  His job duties should primarily involve
> working with things rather than interacting with other people.
> However, members of the general public can be in the
> vicinity of the claimant, when the claimant performs his job
> duties.

(A.R. 19.)

Plaintiff contends that this RFC is not supported by substantial evidence for two

reasons: (1) the ALJ did not properly consider all of the evidence; and (2) the ALJ

improperly discredited Plaintiff's testimony at the hearing.  The Court will evaluate each

argument in turn below.

1.      Consideration of all Evidence

In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the demands of work despite his impairment(s). 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p, West's Soc. Sec. Reporting Serv., Rulings 144 (Supp. 2010). The assessment is to be based upon all relevant medical and other evidence in the record and is to include consideration of the limitations caused by all of the claimant's medically determinable impairments, including impairments which are not "severe" as defined in the regulations. *Id.* at § 404.1545(a & e); SSR 96–8p, West's Soc. Sec. Reporting Serv., Rulings 147–48 (Supp. 2010). The assessment is to consider physical abilities such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching; mental abilities such as understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures; other abilities such as hearing and seeing; and the ability to tolerate various work environments. *Id*. § 404.1545(b,c,d); SSR 96–8p, West's Soc. Sec. Reporting Serv., Rulings 148–49 (Supp. 2010); *see also* § 404.1521 (listing examples of basic work activities which may be affected by impairments).

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Included within the meaning of "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed

9

optometrists, licensed podiatrists, and qualified speech-language pathologists. *Id.*, §
404.1513(a)(1)-(5). Opinions of "other medical sources", such as nurse practitioners,
physician's assistants, and licensed therapists are, by definition, are not "medical
opinions." *Id*. § 404.1513(d). Opinions of "other medical sources" are to be considered
when determining the severity of an impairment or how it affects the claimant's ability to
function but may be afforded less weight than a medical opinion. Soc. Sec. Ruling
(SSR) 06-03p (August 9, 2006).

> a.   Opinions as to Employability

Plaintiff contends that the ALJ failed to consider medical opinions from Drs.
Glenn Momberger and Alvin Wirthlin that Plaintiff was "probably not employable." (A.R.
462.) Admittedly, the ALJ did not explicitly consider this opinion. However, the ALJ is
only required to explicitly weigh and consider medical opinions. 20 C.F.R. §
404.1527(d). A doctor's opinion as to whether claimant is disabled is not a "medical
opinion" and need not be considered as such. 20 C.F.R. § 416.927(e). Rather, the ALJ
is tasked with determining whether a claimant is disabled or unemployable under the
applicable regulations; he need not accept the opinion of a medical source on the issue.
*Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).
Therefore, the ALJ's failure to explicitly weigh and consider Drs. Momberg and
Wirthlin's opinion that Plaintiff was "probably not employable" was not error.

> b.   Evidence of Non-exertional Impairments

Plaintiff argues that the ALJ "committed reversible legal error by failing to
consider the nonexertional effect of Mr. Gehrig's back pain on his mental impairment."
(ECF No. 15 at 15.) Plaintiff contends that the ALJ "ignored evidence that showed that

Mr. Gehrig's symptoms worsened after his back injury." (*Id.*)  However, the Record shows that the ALJ considered Plaintiff's mental health conditions, both before and after his back was injured.  The ALJ examined the opinion of Dr. Crockett—who examined Plaintiff after his injury—and noted that Dr. Crockett's opined that Plaintiff would have some difficulty with interpersonal relationships.  (A.R. 21.)  Based on Dr. Crockett's opinion, the ALJ found that Plaintiff "is limited in his ability to engage in interpersonal contact" and the RFC provides that Plaintiff's job should primarily involve working with things rather than people.  (A.R. 18.)  By including this limitation in the RFC, the ALJ rejected another medical opinion—that of consulting physician Dr. Lipetz—that Plaintiff's mental impairments were not severe and should not limit his ability to work in any fashion.  (*Id.*)

Thus, the Court finds that the ALJ appropriately considered the effect of Plaintiff's back injury on his non-exertional impairments and also properly considered Plaintiff's non-exertional impairments in fashioning the RFC.

c.     Rejection of Opinion of Mr. Broadhurst

Plaintiff argues that the ALJ failed to give proper reasons for rejecting the opinions of Plaintiff's consulting licensed therapist, Mr. Broadhurst.  (ECF No. 15 at 16.) Plaintiff concedes that Mr. Broadhurst was not a medical source pursuant to 20 C.F.R. § 404.1513(a), but argues that the ALJ was still required to give reasons for discounting his opinion.  (*Id.* at 16-17.)

The Court finds that, contrary to Plaintiff's argument, the ALJ gave appropriate reasons for discounting Mr. Broadhurst's opinion.  The ALJ noted that Mr. Broadhurst's opinion was based on a one-time evaluation and that no treating relationship existed.

11

Because there was no treating relationship, the ALJ stated that Mr. Broadhurst "clearly relied on the claimant's reports of extreme symptoms." (A.R. 22.) As discussed below, the ALJ found that Plaintiff was exaggerating his symptoms for purposes of proving his disability and, as such, his self-reports were not credible. (A.R. 20.) The fact that Mr. Broadhurst's opinion relied heavily on Plaintiff's subjective complaints, which the ALJ found were not credible, was a sufficient basis to reject Mr. Broadhurst's opinion. *See Hunt v. Astrue*, 2009 WL 890115, *10 (D. Utah March 30, 2009) (it was not error for ALJ to discount opinion that was based solely on claimant's subjective complaints).

Moreover, the ALJ also found that Mr. Broadhurst's opinions were not consistent with the rest of the record. (A.R. 21-22.) There is sufficient evidence in the record to support this finding. For example, Mr. Broadhurst concluded that Plaintiff had "marked" difficulty maintaining social functioning. (A.R. 550.) But Plaintiff was able to maintain steady employment for sixteen years before to his back injury and had never been terminated from a position based on a disagreement with co-workers. This uncontroverted evidence is manifestly inconsistent with a claimed "marked difficulty maintaining social functioning." (A.R. 20.) The fact that Mr. Broadhurst's opinions were not consistent with the rest of the evidence in the record was also a sufficient basis to reject them. *See Cross v. Astrue*, 2011 WL 666309, *2 (W.D. Okla. Jan. 25, 2011) (inconsistency with remainder of record proper basis for discounting opinion).

Accordingly, the Court finds that the ALJ set forth sufficient reasons for discounting the opinions offered by Mr. Broadhurst and that those reasons are supported by substantial evidence.

       d.     Failure to Explicitly Consider All Medical Evidence

Plaintiff argues that the ALJ erred by failing to consider evaluations performed after December 2007 by Plaintiff's treating physician, Dr. Watts.  Plaintiff also contends that it was error to consider only portions of Dr. Crockett's medical evaluations.  (ECF No. 15 at 12-13, 16.)

The ALJ stated that he fashioned his RFC after "careful consideration of the entire record."  (A.R. 18.)  The Tenth Circuit has held that where the ALJ's discussion of the evidence and the reasons for his conclusions demonstrate that he adequately considered Plaintiff's alleged impairments, the Court should take "at his word" the ALJ's representation that he considered all of the evidence.  *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009); *see also Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (as a general practice, the court should "take a lower tribunal at its word when it declares that it has considered a matter.").  The ALJ's decision in this case contains a discussion of much of the evidence that Plaintiff submitted, a detailed explanation as to how and why he weighed the evidence as he did, and a thorough account of how he arrived at his conclusions.  (A.R. 18-22.)  Thus, the Court takes the ALJ at his word that he considered all of the evidence, even the portions that were not explicitly mentioned. The failure to recite and explicitly evaluated each piece of evidence in the opinion was not error.

      2.    <u>Finding that Plaintiff was "Not Credible"</u>

After stating that Plaintiff "appears to have grossly exaggerated his symptoms at the hearing in an effort to prove his 'disability,'" the ALJ found that Plaintiff's testimony at the hearing was "not credible."  (A.R. at 20.) (*Id.*)  Plaintiff objects to this credibility

determination and argues that there is "no support in the record for the ALJ's conclusion that Mr. Gehrig 'grossly exaggerated his symptoms.'" (*Id.* at 17.)

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995). Despite this deference, the Court must ensure that the ALJ set forth the specific evidence he relies on in evaluating the claimant's credibility. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)

In this case, the ALJ cited specific evidence for why he was discrediting Plaintiff's testimony. The ALJ noted that, when applying for disability benefits, Plaintiff completed a form stating that: (1) he walked a mile every day and could do so without needing to rest; (2) handled stress well; and (3) had never lost a job due to personal issues and felt he was getting better at dealing with authority the older he gets. (A.R. 165.) At the hearing, Plaintiff testified that he could not walk more than a block without stopping, that he could not interact with supervisors, and often became angry with others. (A.R. 35.) The stark discrepancy between Plaintiff's representations at the time of his disability filing and his testimony at the hearing supports the ALJ's finding that Plaintiff was not credible.

Additionally, Plaintiff testified at the hearing that he suffered from "incredible depression", extreme anxiety and delusions, and frequent visual and auditory hallucinations. (A.R. 36-45.) The ALJ found that "nothing in these records reflects the extreme frequency or intensity of psychotic symptoms." (A.R. 20.) Though Plaintiff testified that he had suffered from mental issues for his entire life, there is little medical evidence of ongoing treatment for these issues. The record contains a report from a

14

consultative psychologist, but her assessment of Plaintiff's mental condition is far more mild than Plaintiff described at the hearing.  (A.R. 373-377.)  For example, Plaintiff told Dr. Crockett that he was suicidal due to pain prior to his back surgery but denied thoughts of suicide at the exam.  (A.R. 374.)  Again, the Court finds that this evidence supports the ALJ's conclusion that Plaintiff was exaggerating his symptoms during his testimony at the hearing.

Finally, the evidence in the medical records is contrary to Plaintiff's testimony that his back pain was so severe that he had to lay down for an hour two to four times per day.  (A.R. 35.)  At an appointment with his physician on about a month after his surgery, Plaintiff described his pain as "3" out of "10."  (A.R. 258.)  Plaintiff also described his pain as "4" out of "10" during his consultative psychiatric examination with Dr. Crockett.  (A.R. 377.)  Thus, there was sufficient evidence in the record to allow the ALJ to conclude that Plaintiff's testimony at the hearing regarding his pain was exaggerated.

Because the ALJ explicitly stated his bases for discrediting Plaintiff's testimony, and those bases have substantial support in the record, the Court finds no error in the ALJ's finding that Plaintiff's testimony was "not credible".

3.   Conclusion

With respect to the ALJ's RFC, Plaintiff's arguments can best be summed as disagreeing with the ALJ's interpretation of the evidence and the findings made therefrom.  He repeatedly points out evidence that undercuts the ALJ's RFC or that the ALJ did not explicitly consider in the opinion.  On appeal, the Court is not to reweigh the evidence and determine whether it would have arrived at the same conclusion as the

ALJ.  Rather, the Court's role is only to evaluate whether the ALJ's findings are supported by substantial evidence.  *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498 (10th Cir. 1992) (court may not reweigh the evidence or substitute its judgment for that of the ALJ).  Having reviewed the Administrative Record in this case, the Court finds that the ALJ's RFC is supported by substantial evidence.

**B.    Step Five—Sufficient Jobs in National Economy that Plaintiff can Perform**

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  In this case, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (A.R. 22.)

Plaintiff argues that this finding is not supported by substantial evidence.  The Court disagrees.  At the hearing in this case, the ALJ took testimony from a vocational expert ("V.E.").  The ALJ posed a hypothetical to the V.E. that involved all of the physical aspects of the RFC ultimately adopted by the ALJ.  (A.R. 49-50.)  The V.E. testified that someone with those restrictions could work as a cleaner/housekeeper, laundry worker, or cashier.  (A.R. 50.)  Plaintiff's counsel asked the V.E. whether any of those jobs would be eliminated if the claimant could not interact with the public.  (*Id*.) The V.E. testified that the cashier job would be eliminated but not the cleaner/housekeeper or the laundry worker.  (*Id*.)

Plaintiff first contends that the hypothetical posed by the ALJ was erroneous.

(ECF No. 15 at 22.)  However, as discussed above, the Court has found that the RFC was based on and supported by substantial evidence.  Because the hypothetical question was based on the RFC, and the RFC was supported by the record, the Court finds no error in the hypothetical posed by the ALJ.  Additionally, assuming that the hypothetical question posed by the ALJ was deficient in that it neglected to include any non-exertional limitations to accommodate for Plaintiff's mental health issues, Plaintiff's attorney's questioning of the V.E. cured that.  The V.E. testified that someone with mental health limitations would not be able to work as a cashier.  (A.R. 50.)  This testimony led the ALJ to omit the cashier position from those that Plaintiff could perform.  (A.R. 23.)  Accordingly, the Court finds that the hypothetical posed by the ALJ did not lead to an erroneous conclusion at step five.

Plaintiff also argues that the ALJ's step five finding was erroneous because the jobs identified by the V.E. did not account for a sit/stand option.  (ECF No. 15 at 23.) However, the ALJ's RFC did not require a sit/stand option; rather, the RFC stated that Plaintiff could "sit, stand, or walk a total of 6 hours each in an 8-hour workday."  (A.R. 18.)  As discussed above, the RFC is supported by substantial evidence.  Therefore, it was not erroneous for the ALJ to find that Plaintiff could work in positions that did not allow for a sit/stand option.

Plaintiff also contends that the two jobs identified by the V.E. do not exist in significant numbers because "4,900 jobs regionally and 327,000 jobs nationally[2], is not

---

[2]  The V.E. testified that there were 3,700 cleaner/housekeeper jobs available regionally and 245,000 nationally and 1,200 laundry jobs available regionally and 82,000 nationally.  (A.R. 49.)  Taken together, this is 4,900 jobs regionally and 327,000 jobs nationally.

a significant number of jobs." (ECF No. 15 at 23.) The Tenth Circuit has declined to adopt a bright line rule regarding what number of jobs may be considered "significant," finding that "[t]he decision should ultimately be left to the [ALJ's] common sense in *weighing the statutory language as applied to a particular claimant's factual situation." Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (citation and internal quotation marks omitted). Moreover, the number of jobs available here was much higher than other cases in which courts have found that a significant number of jobs existed. *See id.* at 1330-32 (affirming ALJ's finding that 650 to 900 jobs in the state was a significant number).

Accordingly, the Court concludes that the ALJ's step five finding that there were significant jobs in the economy that Plaintiff could perform is supported by substantial evidence.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's denial of Plaintiff's application for disability benefits is supported by substantial evidence. Accordingly, the Commissioner's denial of benefits is AFFIRMED. The Clerk shall enter Judgment in favor of Defendant. Because Plaintiff has been out of work for six years, the Court ORDERS that each party shall bear its own costs. *See Cantrell v. Int'l Brotherhood of Elec. Workers*, 69 F.3d 456, 459 (10th Cir. 1995) (district court may deny costs if the non-prevailing party is indigent).

Dated this 13th day of February, 2012.

BY THE COURT:

_____

William J. Martínez
United States District Judge